**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Clinton Dennis MAHONEY,
Defendant–Appellant.**

**No. 87–2800.**

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1988.

Decided Oct. 7, 1988.

Richard H. Parsons, Peoria, Ill., for defendant-appellant.

K. Tate Chambers, Asst. U.S. Atty., Peoria, Ill., J. William Roberts, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before WOOD, Jr., COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Defendant–Appellant Clinton Dennis Mahoney appeals from the trial judge's order requiring him to pay $288,655.00 as restitution to the victims of a mail fraud scheme under the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579–80 ("VWPA"). We vacate the order of restitution and remand for resentencing in light of the guidelines set forth in this opinion.

### BACKGROUND

Clinton Dennis Mahoney, formerly the owner of two automobile dealerships in Peru and Spring Valley, Illinois, pleaded guilty to a criminal information charging him with three counts of mail fraud in

violation of 18 U.S.C. § 1341. The information alleged that Mahoney engaged in a scheme to obtain duplicate "Manufacturer's Statement of Origin" on a single automobile from the Ford Motor Company through the United States mails and then to use those statements to obtain financing from two separate lending institutions on the single car. The district judge accepted Mahoney's guilty plea, and sentenced him to a one-year period of incarceration to be followed by two concurrent five-year periods of probation. In addition, and as a condition of his probation,[1] the defendant was ordered to pay a total of $288,655.00 to the victims of his mail fraud scheme on a schedule of regular monthly payments over a five-year period as required by 18 U.S.C. § 3579(f)(2) of the VWPA.[2]

At the sentencing hearing, the court heard testimony about Mahoney's current financial situation and his ability to pay restitution.[3] Mahoney testified, that he was employed as a salesman at Torri's Used Cars, which paid him $600 per week, plus bonuses when business was good. This salary was used to support himself and his dependent wife, who suffers from paranoid schizophrenia. Although she has not required extensive hospital treatment, Mahoney testified that his physician informed him that his close presence and support are necessary to prevent a deterioration of her condition. (Mahoney's five grown children are self-supporting.) He further testified that he had given up all of his assets in an effort to compensate the banks that had lost money as a result of his fraud scheme.[4]

Upon concluding the presentation of evidence, the government made these recommendations:

"The government's recommendation is, as to Count I, that the defendant be imprisoned for a period of five years and given a $1,000 fine. As to Count II that he receive two concurrent periods of probation to commence upon termination of any period of incarceration under Count I, and that he be ordered to pay restitution in the amount of $73,850 to the State Bank of Cherry; $124,805 to the First National Bank of Oglesby; and $90,000 to the First Bank of Princeton. For a total of $288,655. Your honor, that is the recommendation of the government."

Defense counsel objected to the government's recommendation, stating that:

"Dennis is at this point without assets. Dennis at this point, if he were placed in jail, could not pay restitution, not to say he can make full and complete restitution now even if he is permitted to be on probation. But the fact of the matter remains that he has shown a willingness and an ability to pay to those banks as much as he possibly could to help make up for the wrong he committed, and he can continue to do this."

Finally, in his personal statement to the court, Mahoney stated that "[i]f you see fit

---

1. Title 18 U.S.C. § 3579(g) provides:
   "If such defendant is placed on probation or paroled under this Title, *any restitution ordered under this section shall be a condition of such probation or parole. The court may revoke probation and the parole commission may revoke parole if the defendant fails to comply with such order.* In determining whether to revoke probation or parole, the court or parole commission shall consider the defendant's employment status, earnings ability, financial resources, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay."
   (Emphasis added).

2. Subsection (f) provides as follows:
   "(1) The court may require that such defendant make restitution under this section within

a specified period or in specified installments. (2) The end of such period of the last such installment shall not be later than—(a) the end of the period of probation, if probation is ordered; (b) five years after the end of the term of imprisonment imposed, if the court does not order probation; and (c) five years after the date of sentencing in any other case."

3. The presentence report contained a detailed recitation of the defendant's financial condition, including his assets, liabilities, recurring monthly expense and net monthly income. The report also contained detailed information about the defendant's family members.

4. Mahoney testified that he gave his home and a $20,000 rebate check to the First National Bank of Oglesby; and a tract of land and another home where his mother had lived to the First Bank of Princeton.

to let me out there, I will do my very best to pay this back."

In imposing the court's sentence, the judge made these comments with respect to the defendant's ability to comply with the $288,655 order of restitution:

"I know that your wife is very dependent upon you. I appreciate that situation, and I understand it. I also think that it is time that some other members of your family start playing a greater role in helping you perform your responsibilities regarding the family. You have two sons that live in Texas. Maybe they should give some thought to maintaining a closer contact with what is going on in Illinois and doing their share to help out with the situation. In terms of restitution, I have no way of knowing to what extent restitution can ever meaningfully be realized in this case. Obviously, you do have that responsibility."

On appeal Mahoney insists that the district court failed to adequately consider his financial situation as well as the needs and earning abilities of his dependents in ordering restitution in an amount in excess of nine times his annual income.

## LAW

Trial judges traditionally are vested with broad discretion in setting criminal sentences. We have consistently held that " '[a] sentence which is within the limits established by the statute under which it is imposed will not be vacated upon review unless the sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence.' " *United States v. Ford,* 840 F.2d 460, 466 (7th Cir.1988) (quoting *United States v. Harris,* 761 F.2d 394, 402–03 (7th Cir.1985)). These rules of deference apply as well to restitution orders under the VWPA. *See United States v. Bruchey,* 810 F.2d 456, 458 (4th Cir.1987); *United States v. Richard,* 738 F.2d 1120, 1122 (10th Cir.1984).

Despite the fundamental need for appellate deference to trial court sentencing decisions, sentencing statutes such as the VWPA impose important substantive and procedural limitations on the trial judge's discretion. Most important in this case, the "VWPA implicitly requires the district judge to balance the victim's interest in compensation against the financial resources and circumstances of the defendant—all while remaining faithful to the usual rehabilitative, deterrent, retributive, and restrictive goals of criminal sentencing." *Bruchey,* 810 F.2d at 458. Accordingly, § 3580(a) of the VWPA expressly requires the sentencing judge to consider "[t]he amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents,...." [5] While the VWPA places on the defendant the burden of demonstrating the financial needs of his dependents, 18 U.S.C. § 3580(d), Congress has seen fit to require the court to consider the financial need factor where, as here, the defendant "at least produce[s] some evidence on this issue." *United States v. Gomer,* 764 F.2d 1221, 1222 (7th Cir.1985); *Cf. id.* at 1226 (dissenting opinion) ("[t]he statute requires that the defendant bear the burden of establishing his dependents' needs and *not just the burden of production*") (emphasis in original). Thus, although the defendant must demonstrate the financial needs of his dependents, we are obligated to ensure that the sentencing judge at a minimum has considered the defendant's evidence concerning the "financial needs and earnings ability" of Mahoney and his dependents.

█ In order to facilitate effective appellate review on this issue, some courts have invoked their "supervisory power" to require district courts to make specific fact findings on the requirements of § 3580(a). *See, e.g., Bruchey,* 810 F.2d at 458; *United States v. Hill,* 798 F.2d 402, 406–07 (10th

---

5. Presumably the defrauded institutions could obtain a civil judgment against Mahoney and enforce it to the hilt regardless of his financial situation. (And like an order of restitution, a debt incurred through fraud would not be dischargeable in bankruptcy.)

**50**

Cir.1986); *United States v. Palma,* 760 F.2d 475, 480 (3d Cir.1985). The defendant urges us to adopt this rule, yet this circuit has explicitly stopped short of requiring the sentencing judge to affirmatively state that he or she is relying on mandatory factors in imposing sentence. *See Gomer,* 764 F.2d at 1223; *Andrews v. United States,* 817 F.2d 1277, 1280–81 (7th Cir. 1987). In *United States v. Harris,* 558 F.2d 366, 374–75 (7th Cir.1977), we explained that:

"The vindication of a defendant's right to not be sentenced on the basis of improper factors or erroneous information—a right recognized by the Court in *Townsend* [*v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) ] and [*United States v.*] *Tucker* [404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) ]—should not depend upon the fortuity of the sentencing judge disclosing, perhaps inadvertently, the factors relied upon in the imposition of sentence. The fairness of the sentencing process is undermined by reliance upon inaccurate information, not by the sentencing judge stating that he relied upon material which proves to be inaccurate. In addition, the explicit reliance requirement simply encourages judges not to disclose factors considered in imposing sentence. While it is true that a trial judge is generally not obligated to give reasons for the imposition of a particular sentence, it is sometimes necessary, and always advisable, to do so.... Accordingly, we should not adopt a rule which will have the natural and probable effects of encouraging trial judges to avoid giving reasons for sentencing decisions and diminishing the individual offender's confidence in the fairness and objectivity of a critical step in the criminal justice process."

Thus, we have held that "[a]lthough the sentencing judge need not explicitly state he is relying on the mandatory factor, the appellate court must reverse where the defendant shows either (1) that the judge explicitly repudiated the mandatory factor, or (2) that it was not improbable that the judge failed to consider the mandatory factor and was influenced thereby." *Gom-er,* 764 F.2d at 1223. *Gomer* is the law of this circuit; under the time-honored doctrine of *stare decisis,* we adhere to its principles today.

### DISCUSSION

The strongest evidence that the district court in fact considered the needs of Mahoney and his dependent wife was the court's statement that "I know your wife is very dependent upon you. I appreciate that situation, and I understand it." The judge's statements during sentencing and the restitution order itself, however, belie the government's assertion that the judge took into account the needs of Mahoney's wife and his ability to pay in ordering full restitution to the defrauded banks. As explained herein, after an examination of the record we are impelled to conclude that under the *Gomer* standard, it was "not improbable" that the district judge failed to consider the defendant's ability to pay and his dependents' needs in imposing sentence.

Initially, we note that at the conclusion of the sentencing hearing, the judge stated that "in terms of restitution, I have no way of knowing to what extent restitution can ever meaningfully be realized in this case." This statement leads us to question the extent to which the judge actually took into account the defendant's ability to pay and the needs of his wife when ordering full restitution. "[A]lthough the VWPA does not necessarily require full satisfaction of the defendant's obligations to his dependents before awarding any sum to the victims, it does require some principled balancing between the needs of both potential classes of recipients." *Gomer,* 764 F.2d at 1223–24; *see also id.* at 1224 n. 6 ("[T]he committee's intention is that the offender's ability to pay will be a factor in the restitution order, and that the order will cover a period that will reasonably assure full and complete payment of the restitution order notwithstanding any maximum period of probation or incarceration the defendant could have served.") (quoting S.Rep.No. 532, 97th Cong., 2d Sess. 31–32, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515, 2537–38).

More significantly, the restitution order itself—which requires the defendant to make *full* restitution (totalling over $288,000) over the requisite five-year period of payment—leaves little doubt that the judge simply forgot or disregarded the defendant's ability to pay and the needs of his dependent wife as well. We fail to perceive how this defendant, a man without any tangible assets and a $30,000 annual salary—will somehow be able to repay a debt totalling more than nine times his annual salary in five years. The judge did note that Mahoney may have to rely on his family to help support his wife; but without any evidence in the record as to their financial capability, there is no factual basis for the conclusion that they could in fact provide that support. Moreover, even assuming the defendant's children could support the defendant's wife, we still harbor doubts about how Mahoney could under any stretch of the imagination make full restitution in five years. Thus, a combination of the restitution order itself and the judge's statements during sentencing convinces us that it is "not improbable" that the judge failed to consider the mandatory factor regarding the imposition of restitution when imposing sentence under § 3580(d). We thus fail to comprehend the basis for the court's order.[6]

Our holding in this case is in accord with our prior dispositions of similar cases. For example, in *United States v. Lovett*, 811 F.2d 979, 990 (7th Cir.1987), this court's construction of the restitution requirements of 18 U.S.C. § 3651 emphasized that: "[t]his circuit had recognized that the amount ordered to be paid in restitution as a condition of probation must be ascertained and delineated with an accurate computation and must be clearly set out with specific findings and directions in the record and order of restitution." In the context of the VWPA, both the majority and dissenting opinions in *Gomer* mandated that the sentencing court consider the needs of a defendant's dependents. The majority noted: "The VWPA expressly requires the sentencing judge to consider 'the financial needs and earning ability of the defendant's dependents.' 18 U.S.C. § 3580(a)." 764 F.2d at 1222. Similarly, the dissenting judge, although disagreeing with the majority's position that a failure to consider this issue constituted "plain error," clearly recognized: "Admittedly, § 3580(a) requires the court to consider not only the 'loss sustained by the victim' but also the financial needs and earning ability of the defendant and the 'defendant's dependents.'" 764 F.2d at 1226 (Coffey, J., dissenting). Thus, we have consistently recognized the need to consider the needs of dependents and the ability of a defendant to pay restitution.

During his argument, counsel for the government argued that the "court or parole commission" will consider the defendant's ability to pay under 18 U.S.C. § 3579(g) should the defendant default in his payments and the court be called upon to determine whether his probation should be revoked. Thus, the government argues, a court may disregard the defendant's ability to pay and order full restitution even if it is improbable or impossible for the defendant to conceivably meet the court-ordered, five-year payment schedule, for the

---

6. The government cites *United States v. Fountain*, 768 F.2d 790 (7th Cir.1985), for the proposition that the possibility of a change in the defendant's financial circumstances (such as the defendant's winning the lottery) justifies an order of full restitution. *Fountain* involved the murder of two prison guards by prison inmates. We affirmed an order of restitution well beyond the defendants' foreseeable ability to pay based upon the judge's concern that "such accomplished and audacious murderers might have a story to sell to a publisher or broadcaster, and he wanted to make sure they would never reap any gain from their crimes." *Id.* at 803. The case before us presents a completely different situation: in *Fountain* the judge articulated a reasonable rationale for ordering full restitution, and a factual basis in the record supported the stated rationale. Here we have neither. The prospect of the defendant's winning a lottery—present in any case—is too remote a possibility to justify the restitution order in this case. Furthermore, if the government wished to take such a possibility into account, it would be free to make a restitution recommendation based upon an accurate portrayal of defendant's means, reserve the right to seek modification if conditions change and present such a recommendation to the court during the term of the defendant's probation.

court or parole commission will later take into account the ability-to-pay factor if the defendant fails to make restitution. We disagree. An argument of this nature falls on deaf ears. The time of sentencing has been determined as being one of the most important parts of the judicial proceeding. Thus, in order that the sentencing phase of the judicial process not be made a sham, the court is obligated to consider the defendant's financial condition pursuant to § 3580(d) as well as balance and weigh the defendant's financial capabilities and obligations. This same information must be in the record should the court at a later date be called upon to make a determination regarding a probation revocation for nonpayment of restitution or fine. The prosecutor's fallacious argument is based upon a foundation of quicksand for had Congress intended that the defendant's ability to pay be considered only after a defendant's nonpayment, it could very easily have mandated that the court direct the payment of full restitution in every case subject to a later revision of the said order should the defendant fail to comply with his payment schedule based upon his financial condition. As we well realize, at the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court. Thus, an impossible order of restitution, as made in this case, is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitation process. The government would be well advised in the future to take into account the mandates of § 3579(d), including the defendant's financial condition and recommend a schedule of restitution within the probable means of the defendant and if necessary reserve the right to seek modifications of the defendant's probation order should his financial conditions improve during the probationary period. Thus, there is no excuse for the U.S. attorney to make the type of ridiculous argument he made in this case regarding restitution without a scintilla of legal support in the record for the same.

Accordingly, we vacate the district court's order of restitution, and remand for resentencing in light of the guidelines set forth.

SENTENCE VACATED AND CASE REMANDED.