UNITED STATES of America,
Plaintiff–Appellee,

v.

Monty Phillip McCLELLAN,
Defendant–Appellant.

No. 88–1838.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1988.

Decided Jan. 27, 1989.

Rehearing Denied March 22, 1989.

Richard H. Parsons, Peoria, Ill., for defendant-appellant.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for plaintiff-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Monty P. McClellan appeals his convictions of two counts of bankruptcy fraud, one count of mail fraud, and two counts of making false statements to a federally insured bank, in violation of 18 U.S.C. §§ 152, 1341, and 1014, respectively.[1] He is currently incarcerated, serving a total sentence of eight years.

## I.

McClellan is a physician who formerly practiced in Aledo, Illinois. In 1982, he owed about $200,000 to the National Bank of Aledo, debt he had accumulated through a series of bad investments during the 1970's. In 1983, in order to continue his credit and secure additional loans, McClellan submitted financial statements to the Bank of Aledo and to the National Bank of Monmouth, valuing his assets at over $6.5 million and asserting a net worth of nearly $6 million. The listing of assets included close to $2 million in "gold monitor certificates" that were actually worthless.[2]

The next year, the owners of an Iowa motel sued McClellan for breaching a contract to buy the motel. While the jury was deliberating in that case, McClellan and his

---

1. McClellan was also charged with and acquitted of a third bankruptcy fraud count arising from the purchase of a house in Utah.

2. In June 1982, McClellan traded his equity in a Chicago apartment complex for the certificates, which entitled him to a specified amount of gold in June 1983. The certificates were issued by a Las Vegas partnership which had supposedly pioneered a gold mining technique and planned to begin production with the proceeds from the sale of the apartments. The partners soon learned, however, that various claims on the property prevented them from assuming ownership. They informed McClellan that they would not deliver the gold. In November 1982, the agreement was rescinded. Thus it was established that by the time McClellan listed the certificates on his financial statement, he knew that they were worthless.

wife arranged a ski vacation in Europe for January 1984, billing the airfare to their American Express account. On December 13, 1983, the last day of deliberations, McClellan executed an agreement with his father. In exchange for various household goods and two cars, a 1980 Porsche and a 1981 DeLorean, McClellan's father would pay him $30,000. His father transferred the money to McClellan by wire on December 13. Both signatures on the sale document were dated that same day, although the two men lived in different states. The next day, the Iowa jury returned a verdict against McClellan in the amount of $1 million. Soon after, the McClellans departed on their European vacation, charging their expenses to American Express.

A few days after returning from Europe, McClellan filed a Chapter 11 petition. Ten months later, no plan of reorganization had been filed, and the petition was converted to Chapter 7. McClellan's creditors filed an adversary suit against him and succeeded in having his debts declared nondischargeable on the basis of fraud. McClellan then moved to Utah, where he purchased a home in his mother-in-law's name (pursuant to a power of attorney) and began practicing medicine in a newly established clinic owned by his father.

McClellan was indicted on May 6, 1987. Counts I and II charged him with fraudulently transferring the Porsche and the DeLorean, respectively, in contemplation of bankruptcy. He was also charged with use of the mails to defraud American Express and two counts of submitting false statements to federally insured banks.

Among other evidence at McClellan's trial, the prosecution introduced prior testimony of the defendant's first wife, from whom he had been divorced since 1977. It also offered documents and transcripts from McClellan's adversary proceeding in bankruptcy.

McClellan was sentenced to five years on one count of bankruptcy fraud, three years on the other, and five years probation to begin upon his release from prison. Sentence was suspended on the other convictions. He was also ordered to pay $658,-775.93 in restitution as a condition of his probation, pursuant to 18 U.S.C. § 3579.

## II.

McClellan first argues that the district court ordered an unreasonable amount of restitution and in so doing failed to consider the mandatory factors set forth at 18 U.S.C. § 3580(a), in particular his capacity to pay. The sentencing judge specifically stated that he had considered all of the factors under 18 U.S.C. § 3580(a), listing "the amount of the loss sustained by the victims, the financial resources of the defendant, the financial needs and earning ability of the defendant, the defendant's dependents, such other factors as the court deems appropriate." Despite this statement, McClellan asserts that the court merely gave "lip service," not serious consideration, to the mandatory factors.

A court generally need not state explicitly that it is relying upon a mandatory sentencing consideration. *United States v. Gomer*, 764 F.2d 1221, 1223 (7th Cir.1985).[3] An order of restitution will be reversed on appeal if it is "not improbable" that the court failed to consider a mandatory factor. *Id.* at 1123; *see, e.g., United States v. Mahoney*, 859 F.2d 47 (7th Cir. 1988). The sentencing court commits no error if: 1) the issue is not properly before the court (i.e., the defendant has not adequately raised it); 2) the judge implicitly considers the mandatory factor; or 3) the restitution represents the actual proceeds of the crime. *Gomer*, 764 F.2d at 1122. McClellan claims that, despite the court's specific statement to the contrary, it failed to take into account his limited income of $200 per week. In fact, the district court

---

**3.** McClellan cites *Gomer* for the proposition that the court erred in not reciting explicitly the factors considered in sentencing. In *Gomer*, the court remanded an order of restitution, finding that the court had wholly failed to take into account a mandatory factor in formulating an order of restitution. The lack of explicit statements was not dispositive, however; on the contrary, the court pointed out that a sentencing judge need not specifically express reliance upon each mandatory factor. *Id.,* 764 F.2d at 1223.

specifically mentioned this factor in determining that McClellan had deliberately structured his finances to avoid creditors. The judge found that McClellan had consistently attempted to avoid his financial obligations, including those to his own family. The court also noted that McClellan stood to collect, in six or seven years, a share of a substantial trust. Noting that despite his current low income, McClellan retained "tremendous earning potential," the court ordered restitution in the amount of the victims' loss. We have approved an order of restitution that exceeded the defendants' current ability to pay and took into account potential increases in income. *United States v. Fountain,* 768 F.2d 790, 802–03 (7th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986) (approving order of restitution despite likelihood that defendants would remain imprisoned as long as they lived; possibility that they would profit from a book about their crime justified restitution order).

McClellan cites *Mahoney,* in which this court reversed an order of restitution that clearly exceeded the defendant's foreseeable ability to pay. The circumstances in *Mahoney,* we held, left "little doubt" that the judge "simply forgot or disregarded" the defendant's limited income and the special needs of his dependents, particularly his disabled wife. In McClellan's case, the sentencing judge clearly articulated reasons for the order of full restitution, specifically that McClellan chose to maintain a low income while his father's corporation paid all of his living expenses, that the arrangement was intended to shield him from creditors, and that he likely would continue his repeated manipulations to that end. The court ordered that McClellan begin paying restitution at $100 a month, with the payments to be increased should his income increase. There is no indication that the court overlooked any mandatory consideration; rather, the court discussed his ability to pay in some detail. McClellan's argument addresses the weight given various evidentiary factors in determining his ability to pay, not the court's supposed failure to consider this matter. McClellan has demonstrated no abuse of discretion.

*See Fountain,* 768 F.2d at 802 ("[T]he statute does not say that indigency is a defense, only that it is a factor the judge is required to take into account ...").

■ McClellan next challenges the imposition of concurrent sentences on the two counts of bankruptcy fraud arising from the transfer of the Porsche and the DeLorean. Because he transferred both cars in a single transaction, McClellan argues that he should have been subject to punishment for only one count of bankruptcy fraud. *See Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970) (double jeopardy clause prohibits multiple punishments for same offense).

Multiple violations of § 152 occur, and multiple indictments lie, when each fraudulent transfer is a "separate act, taken at a discrete time, with the requisite intent." *United States v. Melton,* 763 F.2d 401, 402 (11th Cir.1985) (quoting *United States v. Moss,* 562 F.2d 155, 160 (2nd Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978)); *see also United States v. Harris,* 388 F.2d 373 (7th Cir.1967). In contrast,

> when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.

*Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932). McClellan executed a single transaction. Although two items were involved, he did not make two separate sales or form the requisite intent on two occasions. The question is not how many items McClellan sold, but how many discrete actions he took. *See Moss,* 562 F.2d at 160.

The Government, defending the separate punishments, relies upon the fact that the titles to the two cars were transferred a month apart, one in April and one in June of 1984. The date that title was formally transferred, however, is not the operative time with respect to McClellan's intent. The record indicates that the reason for the discrepancy was a delay in processing the

two title applications, which the senior McClellan submitted on the same date. More importantly, his father's actions in applying for title to the vehicles have no bearing on the fact that McClellan made only one sale. McClellan acted only once and should have been punished for a single count of bankruptcy fraud.[4] In essence, then, our conclusion is that the automobiles transaction should have been included in one consolidated count. Accordingly, we vacate and set aside the sentences and remand for resentencing, the court in resentencing to treat the counts as one consolidated count.[5]

McClellan next argues that the trial court erred in admitting hearsay testimony from the adversary proceeding in bankruptcy, which was conducted in 1986. McClellan's ex-wife testified on behalf of the creditors, relating a conversation she had with him in about 1975, while they were still married:

Q. And what concerned you about what you heard?

A. Well, he liked to invest heavily in things, and look for loopholes, and try to manage his money wisely, but I felt like some of the things I was hearing were pretty scary to me.

Q. And in what respect were they scary?

A. Well, I felt like we could stand to lose about everything.

Q. Did you express your concern to Dr. McClellan that his investments might cause you to lose everything?

A. Yes.

Q. And what did he say in response to that?

A. That I shouldn't be concerned. That these were all legal loopholes, and everything would go fine, and if it didn't that he would liquidate our assets and stash them, and declare bankruptcy, and let the courts take the rest.

By the time of McClellan's criminal trial eighteen months later, his ex-wife had become disabled by a brain tumor. Her attending physician advised the trial court that his patient's memory and reasoning ability were impaired and that she was not expected to live much longer.[6] Accordingly, the court found her unavailable to testify and admitted her testimony under Fed. R.Evid. 804(b)(1), the hearsay exception for prior testimony sufficiently tested by cross-examination.[7]

McClellan argues that the admission of his ex-wife's testimony violated the Confrontation Clause. The Supreme Court discussed the problem of hearsay testimony and the Confrontation Clause in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980):

When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires that he is unavailable. Even then, this statement is admissible only if it bears adequate "indicia of reliability." *Reliability can be inferred without more in a case*

---

**4.** The Government also cites *Moss*, which held that when concealment of several items occurs before the filing of the petition, the actions amount to a single act of concealment, because a single duty, that of disclosure, is breached. Several courts have adopted this analysis, which appears to have originated with the Ninth Circuit's decision in *Edwards v. United States*, 265 F.2d 302 (9th Cir.1959). *See, e.g., United States v. Melton*, 763 F.2d 401 (11th Cir.1985). *Moss*, of course, only bolsters McClellan's position, since he made the transfer prior to filing bankruptcy. We need not reach this issue, however; only a single transaction occurred and we need not decide whether multiple actions by the defendant should have constituted one count or several.

**5.** The evidence adduced would have been appropriate if the automobiles transaction had been included in one count.

**6.** McClellan's first wife is now deceased.

**7.** Rule 804(b) provides:

Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

*where the evidence falls within a firmly rooted hearsay exception.*

*Id.* at 66, 100 S.Ct. at 2539 (emphasis added). Since evidence that is admissible under an established hearsay exception need not bear any further indicia of reliability, McClellan's Confrontation Clause argument must fail if Rule 804(b)(1) provided a proper basis for admission of the testimony.

McClellan argues that the evidence did not fall within the 804(b)(1) exception because the cross-examination at the bankruptcy proceeding was not "vigorous" enough to challenge the witness' credibility. This argument is somewhat misconceived; the emphasis in this inquiry is upon the motive underlying the cross-examination rather than the actual exchange that took place. *United States v. Pizarro,* 717 F.2d 336, 349 (7th Cir.1983). The circumstances of McClellan's adversary proceeding provided ample motive to impeach his ex-wife: several million dollars of debt were at issue and her testimony undermined his credibility, clearly damaging his case. McClellan's argument that the testimony bore inadequate indicia of reliability to be admitted is thus unavailing. The testimony was admissible under Rule 804 and its admission therefore comports with the reliability requirement of the Confrontation Clause. *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539 ("[C]ertain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them" is constitutionally permissible); *Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 2314, 33 L.Ed.2d 293 (1972) (admission of cross-examined prior testimony comported with Confrontation Clause). McClellan's remaining arguments regarding reliability (pointing out that years elapsed between the conversation and the testimony, speculating that the witness' medical condition affected her prior testimony, and hypothesizing that she harbored bitter feelings toward McClellan after their

divorce) were considerations for the jury; they do not affect the admissibility of the evidence.

■ In a similar vein, McClellan argues that his own prior testimony and written admissions from the adversary proceeding should not have been admitted against him.[8] This evidence was admitted under Fed.R.Evid. 801(d)(2), which provides that a statement is not hearsay if it is an admission by a party-opponent. McClellan apparently does not challenge the applicability of the rule,[9] but cites *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), in arguing that it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.* at 394, 88 S.Ct. at 976. He fails to clarify, however, exactly how this principle is asserted to apply here. In *Simmons,* the defendant sought to have incriminating evidence excluded as the fruit of an illegal search. Because then-existing law required that the defendant show a possessory interest in the property to establish standing to challenge the search, Simmons would have been forced to surrender his Fifth Amendment privilege against self-incrimination in order to assert his Fourth Amendment claim. Deeming this situation "intolerable," the court held testimony from the suppression hearing inadmissible at trial. *Simmons* has no application here. The *Simmons* court emphasized that its holding applied only where a defendant must choose between constitutionally protected rights, and not when he merely must choose between a constitutional right and some other benefit. *Id.* at 393–94, 88 S.Ct. at 975–76; *see also United States v. Flores,* 679 F.2d 173 (9th Cir. 1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983). McClellan has in no way been forced to choose between constitutional rights: he retained his right against self-incrimination throughout the bankruptcy proceeding. No dilemma like

---

**8.** Specifically, he challenges the admission of his own testimony, the parties' stipulations, his answer to the adversarial complaint, and his response to a request for admissions.

**9.** McClellan appears to argue in part that the statements were inadmissible because he did not make them himself. The rule, however, clearly encompasses statements his attorney made on his behalf. Rule 801(d)(2)(C–D).

that presented in *Simmons* exists in the case at bar.

McClellan next attacks the sufficiency of the evidence to convict him of mail fraud. We reverse a conviction on this basis only if, viewing the evidence in the light most favorable to the prosecution, we conclude that no rational trier of fact could have found all elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The mailing of a billing document from the travel agency to Airline Reporting Corporation formed the basis of the mail fraud charge. McClellan points out that the Government witnesses who testified to the mailing could not remember exactly where or when the vouchers were mailed. The precise details of the mailing need not be established, however; it is sufficient to establish that mailing is the sender's regular business practice. *United States v. Keplinger*, 776 F.2d 678, 690 (7th Cir.1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *United States v. Joyce*, 499 F.2d 9, 15 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

McClellan further asserts that the mailing from the travel agent to the ticket bureau was incidental to, rather than "in furtherance of" any scheme to defraud. A mailing is not "in furtherance" if the scheme has already reached fruition at the time of the mailing. *United States v. Bonansinga*, 773 F.2d 166, 168 (7th Cir.1985), *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986). McClellan cites *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). *Maze* used a credit card to obtain food and lodging at several motels. The mailing alleged was the motels' mailing of invoices to the bank that had issued the credit card. Because the defendant had already achieved the end of his scheme by the time of the mailing (and in fact would have been in a better position had the mailing never taken place) the mailing was held too remote from the plan to form the basis of a mail fraud conviction. McClellan's scheme, unlike *Maze*'s, depended upon the mailing. His object could not have been achieved unless the travel agency mailed the invoices to the ticket bureau, which in turn issued McClellan's tickets. The mailing was not, like that in *Maze*, a mere shifting of losses between victims; rather, it was a necessary step in McClellan's plan to obtain the tickets. *Cf. United States v. Wormick*, 709 F.2d 454 (7th Cir.1983).

McClellan likewise challenges the sufficiency of the evidence to support his conviction of bankruptcy fraud, contending that no evidence demonstrated the intent "knowingly and fraudulently" to execute the transfer. The evidence showed that McClellan sold the cars while the jury was deliberating in the Iowa case, one day before a $1 million judgment was entered against him. Two months later, he filed a petition in bankruptcy. For several months after the transfer, McClellan continued to drive the cars; he eventually regained use of them as a benefit of his employment with his father's new corporation. This evidence was sufficient to support the jury's inference that the transfer was made "in contemplation of bankruptcy" and with fraudulent intent. Although McClellan asserts that his testimony denying intent to defraud was "uncontroverted," the jury was entitled to draw inferences from the evidence and determine his credibility. *Branion v. Gramly*, 855 F.2d 1256, 1263 (7th Cir.1988) (a trier of fact may disbelieve or reject any evidence).

Finally, McClellan claims that the prosecutor's reference to certain documents should have been cause for a mistrial, and that the district court's cautionary instruction could not adequately erase the elicited testimony from the jurors' minds. McClellan testified during his direct examination that he believed the false financial statements were accurate at the time he submitted them to the banks. Attempting to impeach McClellan, the prosecutor questioned him about two balance sheets which appeared to indicate the contrary. The documents had not been turned over to the defense in the course of discovery. The district court held that this conduct violated a local discovery rule but denied the defense request for a mistrial. Instead the

court instructed the jury to disregard the elicited testimony.

A trial judge has broad discretion in determining when a cautionary instruction, as opposed to a mistrial, can prevent any possible prejudice. *United States v. Mealy,* 851 F.2d 890, 902 (7th Cir.1988). The trial judge is often in the best position to make this determination in the context of the entire trial. *Id.* Much of the appellant's argument seems to rest on the assertion that a cautionary instruction can under no circumstances serve its intended purpose. Yet this court has held on several occasions that such instructions can be sufficient to avoid the possibility of unfair prejudice. *See, e.g., id.* at 903; *United States v. Fulk,* 816 F.2d 1202, 1205 (7th Cir.1987). McClellan gives no indication of how the reference to the documents is supposed so unfairly to have prejudiced the defense as to warrant a mistrial, except to say that the documents "went to the very heart of the central issue of his innocence or guilt of bank fraud." Curiously, at trial, his counsel characterized the evidence as exculpatory. Given the volume of evidence indicating the defendant's intent, it is difficult to see how this particular evidence could have been so prejudicial. We generally presume that jurors have followed a cautionary instruction; *id.* at 903; McClellan has offered nothing to indicate that this general rule should not apply here. We find no error in the district court's refusal to declare a mistrial.

For the reasons previously discussed, we remand this matter for resentencing on counts I and II of the indictment. McClellan has not otherwise demonstrated error in his trial or his sentence. Accordingly, the judgment of the district court is AFFIRMED.