**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kim A. WISE, Defendant–Appellant.**

No. 91–3275.

United States Court of Appeals,
Tenth Circuit.

June 11, 1992.

Layn Phillips (Frank H. McCarthy of Barkley, Rodolf & McCarthy, Tulsa, OK, and Gerald L. Goodell and Les E. Diehl of Goodell, Stratton, Edmonds & Palmer, Topeka, KS, with him on the brief) of Irell & Mandella, Newport Beach, CA, for defendant-appellant.

Richard L. Hathaway (Lee Thompson, U.S. Atty., with him on the brief), Asst. U.S. Atty., Topeka, KS, for plaintiff-appellee.

Before McKAY, Chief Judge, BARRETT, Circuit Judge, and BRIMMER *, District Judge.

BARRETT, Senior Circuit Judge.

Kim A. Wise appeals from a sentence and order of restitution following his plea

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

of guilty to one count of executing a scheme to obtain money from a federally insured financial institution by means of false or fraudulent pretenses in violation of 18 U.S.C. §§ 2 and 1344(2).

On January 10, 1991, Wise and six others were charged in a twenty-five count indictment with conspiracy and various bank fraud crimes leading to the failure of Peoples Heritage Savings and Loan of Salina, Kansas (Peoples), a federally chartered and insured savings and loan. Wise was charged with engaging in a number of ventures with his co-defendants, including James Cruce, fifty percent owner of Peoples, and Thomas Burger, Peoples' chief lending officer, to fraudulently acquire moneys from Peoples.

Wise pled guilty to Count 23 in which he and his co-defendants were charged with:

> knowingly and unlawfully execut[ing] or attempt[ing] to execute a scheme or artifice to obtain the moneys ... of Peoples ... by means of false or fraudulent pretenses⁴ ... in that defendants obtained $510,000.00 structured as a draw "to be used as working capital" from the $1,700,000 KIM A. WISE commercial line of credit ... which had been granted to him for business purposes only, and which had grown to $3,500,000 through a series of renewals and extensions ... when in truth and in fact, as the defendants well knew, the proceeds from this draw were applied and to be applied to cover a margin call ... on Wise's investment in stock in....

(Appendix of Appellant, p. 000044).

During his plea hearing, Wise, a lawyer and a real estate licensee, acknowledged that: he could be sentenced to five years in prison and ordered to pay restitution; the government had reserved the right to describe fully to the sentencing judge the nature and seriousness of his misconduct, including misconduct not described in the charges to which he had pled guilty; and that he would be sentenced under the sentencing guidelines.

The presentence report prepared in Wise's case related that: Wise and his company were "mega-borrowers" from Peoples, borrowing in excess of fifty million dollars; the damages incurred by Resolution Trust Corporation (RTC) as a result of the acts charged in Count 23 were three and one-half million dollars; the damages to the RTC on an unsecured one and one-half million dollar line of credit to Wise were $1,483,248.09; and the net total of damages reflecting actual losses to the RTC from Wise's involvement were $106,807,577. The report set forth a guideline imprisonment range of 24 to 30 months.

Wise filed detailed objections to the presentence report. He also made three general objections to the report challenging: the failure to find that he was a minimal participant in the offense; the finding that he engaged in more than minimal planning in the offense; and the relevant conduct to be considered for sentencing. Wise reiterated his objections during the course of his sentencing hearing.

Wise was sentenced to 24 months imprisonment, three years supervised release, and ordered to immediately pay three and one-half million dollars in restitution to the RTC.

On appeal, Wise contends that the district court erred in: (1) ordering restitution and in setting the amount of restitution; (2) limiting inquiry concerning the information in the presentence report; and (3) its findings relative to the sentencing guideline range.

### I.

Wise contends that the district court committed reversible error by ordering him to pay restitution and in setting the amount of restitution at three and one-half million dollars. Wise states that the "court's error may have stemmed from Wise's acknowledgment, for purposes of Guideline loss applications, that the total loss associated with the AmeriWest stock transaction was $3.5 million." (Appellant's Opening Brief, p. 18, n. 2).

### a.

■ Wise contends that under *Hughey v. United States*, 495 U.S. 411, 412–13, 110

S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990), the district court erred in imposing restitution in excess of $510,000. The government concedes, without citing *Hughey*, that "[b]ased on existing caselaw it appears that this case should be remanded for the limited purpose of reducing the restitution order to $510,000." (Brief of Appellee at p. 9).

In *Hughey*, the Court held that "the language and structure" of the Victim and Witness Protection Act of 1982 "make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the conviction." 495 U.S. at 413, 110 S.Ct. at 1981. *See also, United States v. Rogat*, 924 F.2d 983 (10th Cir.1991), *cert. denied*, — U.S. —, 111 S.Ct. 1637, 113 L.Ed.2d 732 (1991). Inasmuch as Wise pled guilty to Count 23, i.e., obtaining $510,000 by means of false or fraudulent pretenses in violation of 18 U.S.C. §§ 2 and 1344(2), we hold that the district court erred in ordering restitution in excess of $510,000.

b.

Wise contends that the district court erred by failing to adequately consider his inability to pay restitution. He argues that his $27.7 million negative net worth and our holdings in *United States v. Clark*, 901 F.2d 855, 857 (10th Cir.1990) (order of restitution vacated where presentence report reflected a negative monthly cash flow) and *United States v. Kelley*, 929 F.2d 582, 587 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991) (restitution order reversed where nothing supported district court's statement that Kelley would be able to pay $192,092 after her release based on her future employment opportunities and entrepreneurial skills) require that the district court's order of restitution be vacated.

The government responds that inasmuch as the "court had before it unchallenged evidence that [Wise] was a relatively young and extremely successful real estate developer" (Brief of Appellee, p. 9) whose "substantial entrepreneurial skills were evidenced by a net worth of at least $11,000,-

000 as of April 1985," *id.*, the court did not err in ordering restitution. The government concludes by stating that "[t]he defendant's real complaint appears to be that the lower court imposed the restitution order immediately as opposed to a period of time after release. To the extent this court believes that this was incorrect, it can be remedied on remand." *Id.*

In ordering restitution, the district court found:

THE COURT:

\*     \*     \*     \*     \*     \*

Three, the Victim and Witness Protection Act of 1982 clearly confirms that Congress intended restitution to be considered an integral part of the criminal punishment in the sentencing process of criminal proceedings.

Four, Mr. Wise has been quite successful in his professional endeavors and it is quite likely he will experience an ability to earn substantial sums in the future.

Five, after consideration of the amount of loss sustained, the questionable financial resources of the defendant, the future earning abilities of the defendant, the financial needs of the defendant and his dependents, he should be required to make restitution ... [in the amount of $3,500,000 ... immediately].

(Appendix of Appellant, p. 000354–355).

■ We review the district court's factual findings underlying an order of restitution under the clearly erroneous standard. *Rogat*, 924 F.2d at 984–85. "A restitution order will be upheld if the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered." *Id.* at p. 985. Restitution may be ordered despite a defendant's present indigency. *Id.*

■ Applying these standards to the facts herein, we hold that the district court did not err in ordering immediate restitution. Wise's financial statement, which he personally prepared, reflected that he "has some assets ... [and] possibly may be able to pay the amount ordered." Wise's statement reflected cash of $35,000, bank accounts of $34,500, securities of $38,900, and

receivables of $1,031,730. The statement also reflected liabilities of $8,768,038, which, however, were limited to "unsecured debt and guarantees." (Appendix of Appellant, p. 000090).

We hold that Wise's personal financial statement established that he had substantial assets which could be applied to a court ordered restitution. Based on Wise's financial statement and the district court's finding that Wise had been quite successful and will likely experience the ability to earn substantial sums in the future, *see United States v. McClellan,* 868 F.2d 210, 213 (7th Cir.1989) (restitution of $650,000 will be upheld against a physician in bankruptcy who had "tremendous earning potential"), we hold that the district court did not err in ordering immediate restitution.

## II.

■ Wise argues that the district court erred in refusing to permit inquiry into the factual basis and reliability of the information used to support numerous disputed portions of the presentence report. He states that he was denied due process when the district court refused him the opportunity to effectively examine the probation officer relative to inaccuracies in the presentence report.

After the presentence report was prepared, a conference of some sort was held to resolve his objections to the report. (Appendix of Appellant at p. 000100). During that conference, Wise contends that the Assistant United States Attorney "took the position that he did not have the burden of producing evidence to support the allegations relating to matters for which Wise ha[d] not been convicted which are included in the PSI under the concept of relevant conduct." *Id.*

Wise subsequently filed detailed objections to the report, (Appendix of Appellant at pp. 000095–000137), which were summarized and incorporated into an addendum to the presentence report. (Appendix of Appellant at pp. 138–171). Thereafter, Wise requested and received an evidentiary hearing during which he was told to "present whatever you want to present and we'll [the court] will consider it." *Id.* at p. 000196.

During the hearing, Wise attempted to question the probation officer about the evidence the officer had relied upon in preparing the presentence report. The government objected that the question was invading the thought process. The objection was sustained by the district court. Subsequent thereto, Wise's counsel inquired if he would "be allowed to inquire into the factual basis for his [probation officer's] conclusions ... to determine whether or not the information he placed in the report is reliable." (Appendix of Appellant at p. 000206). Upon general objection by the government, the judge responded, "[n]o you may not." *Id.* Wise argues that the district court's actions violated his due process rights and precluded him from asking "the critical questions," (Opening Brief of Appellant at p. 31), of "[w]here did this information come from" and "why was it deemed reliable." *Id.*

We agree.

Due process requires that a defendant not be sentenced on the basis of "misinformation of a constitutional magnitude." *United States v. Beaulieu,* 893 F.2d 1177, 1181 (10th Cir.1990), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990), quoting, *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972). "This right is protected by the requirement that the defendant be given adequate notice of and an opportunity to rebut or explain information that is used against him." *Beaulieu, id.* Under Fed.R.Crim.P. 32, "it is clear that the defendant and the government enjoy equal procedural entitlements." *Burns v. United States,* —— U.S. ——, —— n. 4, 111 S.Ct. 2182, 2185 n. 4, 115 L.Ed.2d 123 (1991). In *Burns,* the court opined:

As amended by the Sentencing Reform Act, Federal Rules of Criminal Procedure 32 provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate guideline sentence. Rule 32 frames these issues by directing the probation officer to prepare a presentence report

addressing all the matters germane to defendant's sentence.... Rule 32(a)(1) provides that '[a]t the sentencing hearing, the court [must] afford the counsel for the defendant and the attorney for the Government an opportunity to comment upon the probation officer's determination and other matters relating to the appropriate sentence.'

—— U.S. at ——-——, 111 S.Ct. at pp. 2185–86.

Applying these standards to the circumstances herein, we hold that Wise was entitled, upon request, to be informed by the probation office preparing his presentence report, of the factual basis or source of any information contained in the report which may have had an adverse effect on him during the sentencing process. Upon receipt of the factual basis or source of such information, Wise is entitled to a reasonable period of time within which to comment upon the reliability of such information in accordance with Rule 32 as construed in *Burns*.

### III.

Wise contends that the district court's findings relating to computation of the guideline range are clearly erroneous.

■ We review a district court's application of the guidelines for errors of law *de novo. United States v. Norman,* 951 F.2d 1182, 1184 (10th Cir.1991). We review factual findings supporting a district court's offense level calculations under the clearly erroneous standard. *United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991).

#### a.

■ Wise contends that the court erred in failing to find that he was not a minimal participant. He argues that he was "clearly the least culpable of those involved in the transaction," (Brief of Appellant at p. 38), and that the court's finding that he was equally culpable with his codefendants was clearly erroneous.

The government responds that Wise was neither a minimal nor minor participant when, as here: he executed an unsecured

commercial promissory note as a routine business transaction and committed the loan proceeds to the purchase of stock and to meet margin calls; he executed five subsequent notes in a continuing effort to conceal the true nature of the transaction; he submitted fraudulent draw letters to obtain funds to make margin calls while representing that the draws were for working capital or operating expenses in his business; and, the scheme was executed over a period from February, 1986, to November, 1988, and worked successfully enough to defraud Peoples of $3,500,000.

We hold that the court was not clearly erroneous in refusing to find that Wise was a minimal participant. On the contrary, it is obvious that the scheme to which Wise pled guilty could not have been effectuated without his cooperation and participation.

#### b.

■ Wise contends that the district court's determination that a two-level upward adjustment for "more than minimal planning" under U.S.S.G. § 2F1.1(b)(2)(A) was clearly erroneous. He argues that the "entire planning" was done by his co-defendants and that he "simply carried out their specific instructions." (Appellant's Opening Brief at p. 40).

In *United States v. Sanchez,* 914 F.2d 206, 207 (10th Cir.1990), we opined:

The Sentencing Guidelines envision an increase in base offense levels for crimes involving fraud or deceit where "more than minimal planning" is present. U.S.S.G. § 2F1.1(b)(2)(A). The term "more than minimal planning" is defined, in relevant part to include the following:

" 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was clearly opportune."

U.S.S.G. § 1B1.1, comment. (n. 1(f)) (referenced by § 2F1.1, comment. (n. 2)).

The scheme to which Wise pled guilty extended over two and one-half years. During the course of the scheme, Wise executed five notes and submitted at least twelve false draw letters in order to obtain money

from Peoples "by means of false or fraudulent pretenses, representations, or promises." (Appendix of Appellant at p. 000044).

We hold that the district court's two level adjustment for "more than minimal planning" was not clearly erroneous.

### c.

■ Wise contends that the district court's computation of the amount of loss and definition of relevant conduct was clearly erroneous. He argues that "the district court simply assumed that [he] was criminally liable for all counts of the indictment and the losses caused thereby" and ignored the fact that the "only conduct relevant to loss calculation under the Guidelines relates to the loan Wise utilized for the purpose of purchasing stock in AmeriWest … [which amounted to] $3.5 million." (Appellant's Opening Brief at pp. 41–2).

"Sentencing courts are authorized, under § 1B1.3, to consider a broad spectrum of relevant information in determining the guideline range." *United States v. Smith*, 930 F.2d 1450, 1455 (10th Cir.1991), *cert. denied*, 494 U.S. 1068, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990). Moreover, contrary to Wise's assertion that the district court "simply assumed that [he] was criminally accountable for all counts of the indictment and losses caused thereby," the district court found, in accordance with § 1B1.3:

> … that all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection of responsibility for that offense, or that otherwise were in furtherance of that offense, should be considered "Relevant Conduct" and incorporated in the Offense Conduct section of the presentence report. The calculation of the relevant conduct set forth in the presentence report is correct and the court finds this to be so.

(Appendix of Appellant at pp. 000149–151).

### IV.

Wise argues that if the district court's initial findings on guideline computations are found to be in error, the district court's alternative findings regarding upward departure are clearly erroneous. Having determined that the district court's initial findings on guideline computations were correct, we need not consider the court's alternative findings regarding upward departure.

The judgment of conviction is AFFIRMED. The case is remanded, however, for resentencing consistent with this opinion.

McKAY, Chief Judge, concurring in part and dissenting in part:

I join in the court's opinion in every respect except section Ib. From that section I respectfully dissent.

I believe the evidence is insufficient to support a finding of capacity for restitution of even the $510,000 amount we have affirmed. To the extent that the trial court relied on the fact that the defendant, a lawyer and real estate broker, has tremendous future earning capacity, I find that not only unsupported but directly contrary to the reasonable inferences that may be drawn from the evidence. Unlike a physician (*United States v. McClellan*, 868 F.2d 210, 213 (7th Cir.1989)), a felon convicted of fraud crimes could not hold either of these licenses which appear to underpin the trial court's "future earning capacity" findings.

I would vacate the immediate restitution order and require the trial court to make specific findings of the current asset basis from which immediate restitution reasonably can be made, and then fix the immediate amount to correspond to that sum.