**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John J. BRICK, Defendant–Appellant.**

**No. 89–2283.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1990.
Decided June 26, 1990.

John W. Vaudreuil, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

John J. Brick, pro se.

David L. Mandell, Deborah Stahl, Madison, Wis., for defendant-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and SHARP, District Judge.[1]

ALLEN SHARP, District Judge.

John J. Brick was convicted by a jury of three counts of violating 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. The offenses occurred after the effective date of the United States Sentencing Commission Guidelines ("Guidelines"). The district court granted Brick's motion declaring the Guidelines unconstitutional and sentenced him under pre-Guidelines law. Thereafter, the United States Supreme Court held the Guidelines constitutional in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Brick then was resentenced under the Guidelines pursuant to order of this court.

Brick now appeals his new sentence under the Guidelines. He argues that the district court in resentencing him refused to consider certain mitigating conduct and his cooperation with the authorities, both of which occurred after his first sentencing. He also contends that the order of restitution is arbitrary and maintains that he is entitled to a two-level reduction under the Guidelines as a minor participant. We affirm in part but remand to the district court for a new order of restitution.

## I. THE OFFENSES

Officer Lee Glamm of the Eau Claire Police Department in Wisconsin initiated an undercover narcotics operation in January, 1987. Officer Glamm posed as a university student and had contact with Brick several times between September, 1987, and January, 1988.

On January 3, 1988, Officer Glamm met Brick and Jonathan Voigt at a truck stop near Hudson, Wisconsin. Brick had arranged this meeting in a prior telephone conversation with Officer Glamm. At the truck stop, Officer Glamm met Brick in the restaurant and was introduced to Voigt. After the meeting, the agent returned to his vehicle and Brick and Voigt returned to their vehicle. At their vehicle, Voigt gave Brick a quarter ounce of cocaine to sell to Officer Glamm. Brick then walked to Glamm's vehicle and sold Glamm the cocaine for $580. Brick then returned to his vehicle and gave Voigt the money, and Voigt in turn gave Brick $80.

On January 8, 1988, Officer Glamm and undercover agent Gary Smith met Brick and Voigt at the same truck stop. Once again, this meeting was arranged in a prior telephone conversation between Brick and Officer Glamm. At the truck stop, Brick walked into the restaurant alone to meet Glamm and Smith. The three men then walked outside to meet Voigt at the vehicle driven by Brick and Voigt. This time Voigt sold the agents approximately one and a quarter ounces of cocaine for $2,550. Brick received $250 for his part in this transaction.

On January 11, 1988, Officer Glamm and Agent Smith met Brick and Voigt at the same truck stop. This meeting had been arranged in a prior telephone conversation between Agent Smith and Voigt. As with the second transaction, Brick entered the restaurant alone to meet Glamm and Smith. The three men then walked outside to meet Voigt. This transaction was conducted in the agents' vehicle, and Voigt sold the agents eight ounces of cocaine for $12,800. Thereafter, Brick and Voigt were arrested.

## II. THE SENTENCINGS

Brick was indicted on three counts of distributing cocaine in violation of 21

---

1. The Honorable Allen Sharp, Chief Judge, United States District Court for the Northern District of Indiana, sitting by designation.

U.S.C. § 841(a)(1), and 18 U.S.C. § 2.[2] A jury returned a verdict of guilty on all three counts. Prior to his jury trial, Brick filed a motion with the district court to declare the Guidelines unconstitutional. Prior to sentencing, the district court granted that motion.

On July 20, 1988, Brick was sentenced under pre-Guidelines law to 48 months on each count, to be served concurrently, followed by 3 years of supervised release. The district court did not order restitution. Thereafter, the United States Supreme Court declared the Guidelines constitutional in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). In light of *Mistretta,* Brick filed a motion to be resentenced under the Guidelines. On June 9, 1989, Brick was resentenced by the district court. The court utilized the presentence report that was originally prepared for the first sentencing. That report calculated Brick's sentence under the Guidelines.

In the presentence report, the probation officer recommended a base offense level of 20 based on a total drug quantity of 268.92 grams of cocaine. The base offense level was not adjusted for Brick's role in the offense. Brick was given a two-level reduction for acceptance of responsibility. His criminal history category placed him in Criminal History Category III. Thus, his guideline imprisonment range was calculated at 33–41 months. The probation officer also recommended that Brick pay $2,305 in restitution.

At the resentencing, Brick's counsel argued that Brick was less culpable and should receive a two-level reduction as a minor participant. Defense counsel also argued that the district court should consider Brick's cooperation in the prosecution and conviction of another drug dealer, his good adjustment to prison life, his completion of a chemical awareness program, and

his remorse for his actions. It is undisputed that all of this mitigating conduct occurred after the first sentencing. In light of the mitigating conduct, defense counsel requested that the district court impose a sentence not exceeding the sentence that Voigt received.

The government agreed that the district court should consider the mitigating conduct that occurred after the first sentencing, including Brick's cooperation in the prosecution and conviction of the drug dealer. The government, however, did not file a 5K1.1 motion under the Guidelines. The government then argued that Brick and Voigt were equally culpable and that a two-level reduction as a minor participant was not warranted. The government lastly informed the court that it did not object to a downward departure from the guideline range in order to keep Brick's sentence consistent with Voigt's sentence.

The district court informed the parties that it was structuring Brick's sentence so that it would be comparable to the sentence he initially received on July 20, 1988. The court noted that the sentence would be slightly less than the original sentence but would include an order of restitution (the first sentence did not include restitution). The court also noted that it sought to tailor Brick's sentence so that it would be comparable to Voigt's sentence. The court, though, did observe a major distinction between Brick and Voigt—Brick was on probation at the time he committed the present offenses.[3]

The district court then accepted the guideline calculations in the presentence report and sentenced Brick to 34 months, the low-end of the applicable guideline range, and to a 3 year term of supervised release. The court also ordered Brick to pay $2,550 in restitution to the Eau Claire Police Department and $750 in restitution

---

**2.** Counts 1, 2 and 3 relate to the first, second, and third transaction, respectively. Voigt was charged in counts 2 and 3 of the same indictment charging Brick. Voigt pleaded guilty and was sentenced by the district court under the Guidelines to 30 months imprisonment and to 4 years supervised release. Additionally, as part

of his plea agreement, Voigt was ordered to pay $3,300 in restitution.

**3.** At oral argument, counsel for the government stated that Brick was on Wisconsin state probation for committing felony battery on a police officer.

to the Wisconsin Division of Criminal Investigation, for a total of $3,300 in restitution.

## III. ANALYSIS

### A. Role in Offense

We first address the role in offense issue since it affects Brick's guideline range. As will become apparent, the issue regarding the district court's refusal to consider Brick's mitigating conduct cannot be resolved without first determining Brick's guideline range, see section B, *infra*. Brick argues that the district court improperly denied him a two-level reduction as a "minor participant" under section 3B1.2(b) of the Guidelines.

The standard for reviewing district court findings and determinations under section 3B1.2 is clear error. *United States v. Miller*, 891 F.2d 1265, 1270–71 (7th Cir.1989); *see also United States v. Tholl*, 895 F.2d 1178, 1186 (7th Cir.1990). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Thus, if the most that Brick can show is that the record permits more than one conclusion on this issue, there is no clear error.

In determining whether Brick is a minor participant, the Guidelines provide that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3). Additionally, the decision on whether to grant the reduction "involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, comment. (backg'd.). The Guidelines also recognize that many offenses are committed by a single individual or by individuals of roughly equal culpability and that in such a case, no one should receive the two-level reduction. U.S.S.G. § 3B1.4, comment. *See also United States v. Tetzlaff*, 896 F.2d 1071, 1074 (7th Cir.1990).

The district judge here stated that the court was "accepting the guideline calculations that the Probation Office had computed." Resentencing Transcript, June 9, 1989, ("Resentencing") at 13. We believe it is reasonable to presume then that the district court adopted the probation officer's findings that Brick was not a "minor participant" within the meaning of section 3B1.2(b). The probation officer found that although Voigt supplied the cocaine, the transactions could not have taken place without the assistance of Brick. Indeed, the evidence at trial indicates that Brick did arrange by telephone the first and second transaction. Moreover, Brick conducted the first transaction and was the contact person in the second and third transaction. In the last two transactions, Brick went into the restaurant alone to meet the agents and to bring them outside to deal with Voigt.

Brick argues that he is a minor participant because he profited only $330 from the first two transactions while Voigt profited $2,800. The importance of an individual's role in a drug offense should not be based solely on the amount of that individual's pecuniary gain. The fact that Brick failed to cut a better deal with Voigt does not mean that his role in the offense was minor. Individuals can play different but integral roles in drug transactions. Brick played an integral role by linking the seller to the buyer, that is, by serving as Voigt's agent when dealing with the undercover agents. A person who directs a buyer to a seller cannot be considered a minor participant because that person also plays an important role in the distribution of the drugs.

Brick also contends that as the offenses became more serious, his role decreased. The last transaction certainly involved the most cocaine, and the evidence at trial does indicate that Voigt arranged the last transaction by himself. However, prior to this last transaction, Brick had to reassure Voigt that the buyers could be trusted. Brick then gave Voigt a ride to the truck stop and met the agents alone in the restaurant before taking the agents outside to meet Voigt. During the last transaction,

Brick sat in the back seat of the agents' vehicle while Voigt conducted the sale in the front seat. Brick played an important role in this last transaction by his mere presence. Without the presence of Brick, Voigt may not have consummated this last transaction, nor any of the transactions.

Under 18 U.S.C. § 3742(e), we must give due deference to the district court's application of the Guidelines to the facts of a particular case. In light of the clear error standard for section 3B1.2 determinations, we cannot say that the district court committed clear error when it found that Brick was not a minor participant. Brick was as culpable as Voigt in the commission of these drug sales. Thus, Brick was not entitled to a two-level reduction under section 3B1.2(b) of the Guidelines.

### B. Mitigating Conduct

■ Brick also argues on appeal that the district court in resentencing him refused to consider certain mitigating conduct that occurred subsequent to Brick's first sentencing. The mitigating conduct can be categorized as follows: (1) substantial assistance to authorities; (2) excellent adjustment to prison life (including the fact that Brick gained a position of trust in being permitted to work outside of the strict custody area); (3) completion of a chemical awareness program (including the fact that Brick spoke to anti-drug groups); and (4) remorse for committing the crimes. Appellant's Brief at 6.

We will address substantial assistance to authorities when we resolve Brick's next alleged error regarding the district court's refusal to consider his cooperation under section 5K1.1 of the Guidelines. We also note that Brick cannot complain that the district court refused to consider his remorse, for the court gave him a two-level reduction for acceptance of responsibility under section 3E1.1 of the Guidelines. That leaves for present discussion the district court's refusal to consider Brick's adjustment to prison life and his completion of a chemical awareness program.

Brick's argument regarding the district court's refusal to consider his mitigating conduct appears to be twofold. First, he contends that the district court believed as a matter of law that it could not consider the mitigating conduct. Secondly, he ingeniously argues that *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), dictates that a sentencing court *must* consider aggravating or mitigating conduct that occurs during the interim period between sentencing and resentencing.

We immediately dispose of the *Pearce* argument for Brick has simply misinterpreted that case. In *Pearce*, the Supreme Court observed that "[a] trial judge is not constitutionally precluded ... from imposing a new sentence, whether *greater* or *less* than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' " 395 U.S. at 723, 89 S.Ct. at 2079 (emphasis added) (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949)). We have found that *Pearce* applies to resentencing after vacation of an illegal sentence, as done in this case. *United States v. Paul*, 783 F.2d 84, 88 (7th Cir.1986).

Brick cites the preceding quote from *Pearce* in support of his proposition that the district court must consider his subsequent mitigating conduct. This passage from *Pearce* only teaches that the Constitution does not preclude a sentencing court from considering subsequent aggravating or mitigating conduct. We do not read it as prescribing the precise consideration of such conduct. Consequently, the district court did not violate any principles set forth in *Pearce*.[4]

Brick also alleges that the district court believed as a matter of law that it could not consider the mitigating conduct. Upon reviewing the record, we cannot conclude that the district court held such a belief.

---

**4.** We note that Brick has not argued on appeal that the district court increased his term of imprisonment upon resentencing without complying with the mandates of *Pearce*. As a result, we do not address the application of *Pearce* in that context.

The district judge in imposing sentence stated that "it is appropriate for the Court, in fact necessary for the Court to put itself back where we were last July and sentence you in the way that I would have sentenced you had I been sentencing under the sentencing guidelines at that time...." Resentencing at 11. The judge then indicated:

> Obviously what you've done in prison is commendable and it is certainly something that I am glad about. I think it demonstrates that you are really intending to put your problems behind you and get on with a different kind of life, and that is certainly going to stand you in good stead. That's going to be very helpful to you in the future and important for you to do so.
>
> I have some concern that you came into this today thinking that you were going to get a big chance in your sentence and that is not going to happen. I know that that is difficult for you and it's very difficult for your parents to understand, but I continue to believe that the sentence that was imposed upon you last July was the proper response to your criminal conduct, particularly in light of the fact that you were on probation at the time for a very serious felony conviction.
>
> *I am structuring the sentence so that it gives you approximately what you would have received under the old law sentence.* It will be slightly less and I will add a restitution requirement to it since you're being sentenced under the sentencing guidelines and that is permissible.

Resentencing at 11–12 (emphasis added).

The district judge further stated, "I'm sentencing in the lower range of the guideline in order to be consistent with the sentence that I imposed last summer." Resentencing at 13. The district judge's statements illustrate that the court sought to impose a new sentence that was consistent with its original intentions at the first sentencing.[5] We acknowledge that the district judge initially stated that it was "necessary" for the court to resentence Brick as if it was the first sentencing, thereby implying that the court had to ignore his subsequent mitigating conduct. By sentencing Brick to the low-end of the guideline range, however, the court may have considered his mitigating conduct while simultaneously executing its original intentions. In reviewing the record as a whole, we conclude that the district court simply executed its original intentions and did not believe as a matter of law that it could not consider Brick's mitigating conduct.

The government notes that in *United States v. Paul,* 783 F.2d at 88, we found that in the absence of *Pearce*-type conduct, a district court must resentence a defendant in accordance with its original intentions. *See also United States v. Kuna,* 781 F.2d 104, 106 (7th Cir.1986). The principle of "original intention" has not been tested in a case where the defendant argues that the district court refused to consider mitigating conduct that occurred subsequent to the first sentencing. That principle cannot be tested here, however, because the district court sentenced Brick to a term of imprisonment within the applicable guideline range.[6]

We have observed that we "will be quite deferential to a sentencing judge's decision to impose a sentence within the correctly ascertained guideline range...." *United*

**5.** The sentence imposed by the district court further supports the conclusion that the district court merely executed its original intentions. In real-world terms, Brick would have served approximately two-thirds of his 48 month old law sentence (assuming good behavior). Upon resentencing, the district court imposed a sentence of 34 months. Brick is eligible to receive good-time credit under the Guidelines. After the accumulation of this good-time credit, it is highly probable that Brick will serve the same time in prison under his Guidelines sentence as he would have under his pre-Guidelines sentence.

**6.** In section A, *supra,* we concluded that Brick is not entitled to a two-level reduction for being a minor participant. Thus, the correct guideline range for Brick is 33–41 months based on an offense level of 18 and a criminal history category of III. U.S.S.G. Ch. 5, Pt. A, Sentencing Table. Brick was sentenced to 34 months, the low-end of the applicable guideline range.

*States v. Miller,* 874 F.2d 466, 471 (7th Cir.1989). Most recently, we noted that "[a] sentence within the correct guideline range that was not imposed in violation of the law must be affirmed. 18 U.S.C. § 3742(f)(3)." *United States v. Guerrero,* 894 F.2d 261, 270 (7th Cir.1990). There is simply no basis here in which to conclude that the 34 month sentence was imposed in violation of the law and therefore the sentence must be affirmed. And although Brick has not framed his argument in such terms, we certainly do not have jurisdiction to consider any refusal on the part of the district court to depart below the guideline range based on Brick's mitigating conduct. *See United States v. Franz,* 886 F.2d 973 (7th Cir.1989).[7]

### C. Substantial Assistance

■ Brick next contends that the district court refused to consider his assistance in the prosecution and conviction of another drug dealer. As we noted in section B, *supra,* Brick has classified his cooperation with authorities as mitigating conduct that the district court refused to consider. We emphasize once again that the district court was simply executing its original intentions and did not believe as a matter of law that it could not consider Brick's cooperation. In fact, the court may have considered Brick's cooperation by sentencing him to the low-end of the guideline range while at the same time executing its original intentions.

7. We emphasize that Brick has not framed his mitigating conduct issue in terms of the district court's failure to depart below the applicable guideline range. Rather, he argues that the district court believed as a matter of law that it could not consider the mitigating conduct and that *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), required the consideration of such conduct. Yet, Brick was sentenced to the low-end of the applicable guideline range. By arguing that the district court refused to consider his mitigating conduct, Brick is for practical purposes arguing that the district court should have reduced his sentence by departing below the guideline range. In such a circumstance, we clearly are without jurisdiction to review the district court's refusal to depart below the guideline range. *See United States v. Franz,* 886 F.2d 973 (7th Cir.1989).

Brick, nevertheless, argues that the district court failed to make a ruling under section 5K1.1 of the Guidelines as to whether or not he provided substantial assistance to the authorities. It is undisputed that the court did not make such a ruling, nor did it comment on Brick's cooperation at resentencing. But such a ruling was not required for section 5K1.1 is not triggered unless the government files a motion, and no such motion was filed in this case.[8] *See United States v. Lewis,* 896 F.2d 246, 247–48 (7th Cir.1990); *see also United States v. Francois,* 889 F.2d 1341, 1344–45 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990); *United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990).

At oral argument, counsel for Brick contended that the government satisfied the motion requirement by the statements it made to the district court at resentencing. The government and Brick informed the district court at resentencing that Brick had assisted in the prosecution and conviction of another cocaine dealer. Counsel for the government went so far as to inform the district court that Brick's cooperation "should be considered." Resentencing at 9.

We conclude that the statements made by the government at Brick's resentencing do not satisfy the motion requirement in section 5K1.1.[9] The Guidelines unambig-

8. Section 5K1.1 provides in relevant part:

Upon *motion* of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

\* \* \* \* \* \*

(Emphasis added.).

9. It was not improper for the government to request that the district court consider Brick's cooperation yet not file a motion for departure under section 5K1.1. There may be circumstances where the government determines that a defendant's cooperation only merits a lower sentence within the applicable guideline range, rather than a departure below that range.

uously require that the government file a motion in order to trigger section 5K1.1.[10] There are no exceptions to the motion requirement. *See, e.g., United States v. Coleman,* 895 F.2d 501, 505 (8th Cir.1990) (letters from government informing the court of the defendant's cooperation, although the functional equivalent of a motion, do not satisfy the motion requirement of 18 U.S.C. § 3553(e) (section 3553(e) is the statutory counterpart to section 5K1.1)). Since a 5K1.1 motion was not filed here, the district court did not have to determine whether Brick provided substantial assistance to the authorities.

### D.   Restitution

■   Brick finally argues that the order of restitution was arbitrary and not supported by the record.[11] An order of restitution must be ascertained and delineated with an accurate computation, cannot exceed the loss actually caused, and must be set out with specific findings. *United States v. Lovett,* 811 F.2d 979, 990 (7th Cir.1987); *see also United States v. Lynch,* 699 F.2d 839, 845 (7th Cir.1982). The amount of restitution may be proved in one of three ways: by proof at trial, by judicial determination, or through the consent of the defendant. *United States v. Harris,* 761 F.2d 394, 404 (7th Cir.1985). In ordering restitution under the Guidelines, "the court shall consider the amount of loss the victim suffered as a result of the offense, the financial resources of the defendant, the financial needs of the defendant and his

dependents, and other factors the court deems appropriate.   18 U.S.C. § 3664(a)." U.S.S.G. § 5E1.1, comment. (backg'd.).

■   Here, the district court ordered Brick to pay $2,550 in restitution to the Eau Claire Police Department and $750 in restitution to the Wisconsin Division of Criminal Investigation, for a total of $3,300 in restitution. In the presentence report, the probation officer computed the total restitution at $3,955. Appellant's Brief at A–13. For count 1, the restitution consisted of $580 to the Eau Claire Police Department for the "buy money" and $75 to the Wisconsin Division of Criminal Investigation for the lab fees incurred in testing the drugs. Thus, the total restitution on count 1 was $655. For count 2, the buy money was $2,550 and the lab fees were $150. Thus, the total restitution for count 2 was $2,700. For count 3, the restitution consisted of $600 in lab fees. The probation officer recommended that Brick pay restitution in the amount of $2,305 ($655 on count 1, $1,350 on count 2, and $300 on count 3). On appeal, Brick argues that he should be responsible for $780 in restitution. This figure consists of $330, his profit from the first two transactions, and $450, count 1 lab fees and one-half of the lab fees for counts 2 and 3.

After reviewing these computations, we cannot find any evidence in the record that substantiates the district court's restitution amount of $3,300. The district judge stated that the court was "accepting the guideline calculations that the Probation Office

10.   We held in *United States v. Lewis,* 896 F.2d 246, 249 (7th Cir.1990), that the government motion requirement in section 5K1.1 does not violate due process.

11.   We note that Brick in his brief raises a *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), argument regarding the district court's imposition of restitution upon resentencing (the district court did not order restitution in the first sentencing). Appellant's Brief at 12–13. Yet, in his brief, Brick requests that this court vacate the order of restitution and remand to the district court for a new order of restitution. Appellant's Brief at 17. At oral argument, counsel for Brick clarified the restitution issue by stating that the district court could order restitution but that the present amount was an arbitrary figure. As a result, we

do not address the issue of whether the imposition of restitution upon resentencing violated the teachings of *Pearce.*

We also note that at oral argument, the government contended that Brick waived the restitution issue by failing to raise it in the district court. The imposition of restitution was discussed at the resentencing but mostly in terms of whether such an order would violate double jeopardy. Nonetheless, after the district court ordered restitution, defense counsel did inform the court that Voigt received all of the money, "but for the few hundred dollars that Mr. Brick received...." Resentencing at 16. We conclude that this was a sufficient albeit paltry challenge to the amount of restitution. Thus, the restitution issue was preserved for appeal.

had computed." Resentencing at 13. If the district court was adopting the probation officer's restitution recommendation, the court missed the mark because the probation officer recommended $2,305 in restitution. We can only speculate as to how the district court arrived at the amount of $3,300. At oral argument, counsel for the government surmised that the district court imposed a sum equal to the restitution imposed on Voigt. Voigt was ordered to pay $3,300 in restitution as part of his plea. Counsel for the government stated that he drafted Voigt's plea, but admitted that he did not know how the restitution amount was computed for Voigt. Counsel also suggested that the court's amount was the sum of the total restitution for count 2 ($2,700) and count 3 ($600). Such a computation, however, ignores count 1—the transaction conducted by Brick.

The district court did not explain how it computed the $3,300 in restitution, other than bifurcating the amount into buy money and lab fees. Moreover, the court did not provide any factual support for its restitution amount, and we cannot find any support in the record for that amount. We therefore find that the district court abused its discretion in ordering Brick to pay $3,300 in restitution. *See Harris*, 761 F.2d at 405. Accordingly, we vacate the district court's order of restitution and remand to the district court for the imposition of a new order of restitution consistent with this opinion.

## IV. CONCLUSION

The district court did not commit clear error in refusing to give Brick a two-level reduction as a "minor participant" under section 3B1.2(b) of the Guidelines. Additionally, the district court did not believe as a matter of law that it could not consider Brick's mitigating conduct, including his cooperation with the authorities. The court exercised its original intentions and imposed a 34 month sentence within the applicable guideline range. Brick has failed to demonstrate how the imposition of that sentence was a violation of law. Brick

also cannot complain that the district court failed to determine whether he provided substantial assistance to the authorities, for the government never filed the requisite 5K1.1 motion. Brick has demonstrated that the order of restitution was arbitrary. We therefore vacate the restitution order and remand for proceedings consistent with this opinion.