16 F.3d 1226
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
John F. ROSCH, Defendant-Appellant.
 Nos. 92-2164, 92-2826 and 92-3940.
 United States Court of Appeals, Seventh Circuit.
 Argued May 3, 1993.
Decided Dec. 21, 1993.
 
 Before POSNER, Chief Judge, COFFEY, Circuit Judge and WILLIAMS, District Judge.*
 ORDER
 In three separate appeals, Defendant John Rosch attacks his conviction and sentence, as well as the district court's dismissal of his petition for a writ of habeas corpus. We affirm.
 I.
 On September 20, 1990, a Third Superseding Indictment was filed against Rosch, charging him with twenty-eight counts of criminal misconduct in connection with his activities as president and chief operating officer of Glen Ellyn Savings & Loan Association. Three days into his trial, Rosch pled guilty to Counts One and Twenty-Eight of the Third Superseding Indictment. Count One charged Rosch "with conspiring to run the affairs of the Glen Ellyn Savings & Loan Association through a pattern of racketeering ...," in violation of 18 U.S.C. Sec. 1962(d) (the "RICO charge"). Count Twenty-Eight alleged that on May 24, 1985, Rosch "knowingly and willfully misapplied approximately $100,000 in funds and credits belonging to and entrusted to the custody of Glen Ellyn Savings ...," in violation of 18 U.S.C. Sec. 657 (the "embezzlement charge"). In exchange for Rosch's guilty plea, the government agreed to dismiss the remaining counts. Rosch signed a written plea agreement which stated that he had "read the charges against him contained in the Third Superseding Indictment," that "those charges ha[d] been fully explained to him by his attorney[,]" and that he "fully underst[ood] the nature and elements of the crimes which he ha[d] been charged."
 The district court held a change-of-plea hearing on October 25, 1990. At the hearing, the judge (1) described the nature of the RICO and embezzlement charges, (2) incorporated by reference the summary of the indictment, which he had read to the jury at the commencement of trial and which both parties had approved, and (3) upon agreement of the parties, incorporated by reference the government's opening statement summarizing what the government believed the evidence would show. The judge also emphasized several key provisions of the plea agreement. One such provision stated that the judge was not a party to the agreement and could impose any sentence up to the statutory maximum on either count. Another authorized the government to recommend whatever sentence it deemed appropriate.
 The government also, in open court, directed the judge's attention to paragraph 10 of the plea agreement, which states as follows:
 10. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.
 The judge asked Rosch whether he understood that the provisions of paragraph 10 were applicable to his case, and Rosch responded yes.
 Finally, the judge drew Rosch's attention to the portions of the plea agreement which stated that (1) the maximum penalty for the RICO charge was a twenty-year prison sentence and a fine of twice the amount of loss to the victim or gain to the defendant; and (2) the maximum penalty for the embezzlement charge was an additional five-year prison term and a $250,000 fine, plus any restitution the court might order.
 Having reviewed the charges, the government's statement of the evidence, and the plea agreement, the judge addressed Rosch as follows:
 Now, Mr. Rosch, then, you understand now the charges that have been brought against you to which you would be pleading guilty, and the Government in summary form and, of course, incorporating by reference the more detailed opening statement that you previously had heard, you understand now the evidence that would be presented in this case should the trial have been completed.
 Now, is that statement of facts then for the charges to which you would be pleading guilty substantially correct?
 Rosch responded that the facts were "substantially correct."
 The judge then continued by engaging Rosch in the following colloquy:
 COURT: Did you, in fact, then commit the crimes as charged?
 ROSCH: According to the law, yes, your honor.
 COURT: And did you intend to commit the acts that constitute the crimes as charged?
 ROSCH: Yes.
 The judge then asked Rosch if he still wanted to change his plea to guilty. Rosch stated that he did. Thereafter, the judge accepted the change of plea, entered a judgment of guilty, and set a sentencing date.
 On January 29, 1990, the government sent Rosch a copy of the United States Probation Office's presentence report. The presentence report included the government's version of the charges and a recommendation that Rosch be sentenced to twenty years imprisonment, ordered to make full restitution, and fined $52,000,000.
 On March 15, 1991, Rosch filed a 194-page pro se "Defendant's Version" discussing his culpability and responding to the presentence report. In that document Rosch stated that: (1) he pled guilty as a tactical maneuver to limit his sentencing exposure; (2) he personally researched the law governing guilty pleas, including his rights under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); and (3) he knew that he probably would have been convicted of many of the counts contained in the Third Superseding Indictment had he proceeded with his trial.
 Two weeks later, on April 1, 1991, and over five months after he originally pled guilty, Rosch moved to vacate the plea agreement and withdraw his guilty plea on the ground that it was neither knowing nor voluntary due primarily to the inadequate assistance he believed he had received from his attorney. The court denied Rosch's motion on June 28, 1991, finding that Rosch had received effective assistance and had voluntarily and knowingly pled guilty. The judge concluded that Rosch had initially pled guilty as a tactical maneuver and then decided after the presentence report was issued that he had made a bad choice. The judge also noted that Rosch not only had a law degree, but had graduated at the top of his class. The judge further stated that Rosch had reaped the reward he bargained for in changing his plea, as his maximum exposure to criminal punishment was limited when the government dropped all other charges against him.
 Rosch maintained that he was innocent, and challenged the contents of the presentence report. The government moved to have Rosch object to the presentence report on a line-by-line basis, pursuant to Federal Rule of Criminal Procedure 32. During the hearing on this motion, Rosch denied his guilt of any crime. Rosch also indicated his wish to contradict the testimony given at trial, stating:
 Judge, if it please the Court, all you heard was [the Assistant United States Attorney's] direct examination. You did not hear any evidence from the defendant, and I understand I pled guilty, I won't go into the reasons again. I have evidence that will contradict the very testimony on the stand and I wish to present it.
 The government then moved to vacate the Rule 32 proceedings entirely, arguing that Rosch had waived his right to a factual determination on the report by refusing to identify the specific matters in the presentence report to which he objected.
 The sentencing hearing began on November 26, 1991, and continued on December 2 and 12, 1991, and February 6 and 7, 1992. The issues centered on whether Rosch caused the failure of Glen Ellyn and the amount of the loss incurred by the failure.
 The primary testimony presented at these proceedings came from the government's witness, Thomas C. Kovac, a federal bank examiner in charge of the Glen Ellyn investigation. Kovac testified regarding the facts surrounding the failure of Glen Ellyn, as well as the nature of the losses caused by Rosch's bad loans. Specifically, Kovac testified that (1) only $2.4 million dollars worth of the $19.6 million dollars worth of fraudulent loans Rosch approved between 1981 and 1985 would have had to fail for Glen Ellyn itself to fail; (2) the cause of Glen Ellyn's failure was $12 million in defaulted loans made to a former co-defendant and authorized by Rosch; and, (3) the actual losses to Glen Ellyn and its successor in interest, the FSLIC, as a result of Rosch's fraudulent loan approvals was $12 million in defaulted loans, plus an additional loss of $3.8 million to a savings institution in South Beloit, Illinois.
 Although Rosch was given the opportunity to call his own witnesses, the only evidence he presented was his own testimony plus voluminous documents, wherein he characterized his activities as poor business judgment and denied that his actions caused Glen Ellyn to fail. Rosch also claimed that the FSLIC was negligent in its efforts to collect on defaulted loans, and that he should not be held responsible for their negligence. On cross-examination Rosch admitted that over a five- or six-year period, he had transferred property to his wife and children for no compensation, with the intention of defeating creditors in connection with Glen Ellyn. Rosch further testified that his wife currently had assets of $795,000.
 The court sentenced Rosch on February 28, 1992. The court found that the crimes which Rosch admitted in the plea agreement and the evidence the government presented at the sentencing hearing were sufficient to support a finding that Rosch had caused Glen Ellyn to fail, and characterized Rosch's evidence to the contrary as "arranging and rearranging the deck chairs on the Titanic." The court determined that the losses which Rosch caused totalled at least $2 million, but that it was not necessary to determine precisely how much more than $2 million since Rosch did not have the ability to pay a restitution order exceeding that amount. In reaching the conclusion that Rosch would be able to pay $2 million in restitution, the Court made the following factual determinations: (1) Rosch had deliberately transferred assets to his wife and children in excess of normal good faith gifts; (2) many of the assets in his wife's name were recoverable as a fraud to the government; (3) Rosch had fraudulently transferred title to a lucrative country club membership to family members at the same time he was seeking court-appointed counsel on the basis of indigence; and, (4) Rosch had current assets of $775,000. The court also stated that its ruling took into consideration "the defendant's financial needs, earning ability, his dependents and their needs, [and] foreseeability of future earnings."
 Based on the above findings, the court sentenced Rosch to nine years on the RICO charge and ordered him to pay $2 million in restitution. The court stated that the restitution order was based on the funds Rosch currently had available and also on what he would be expected to earn within five years of his release from prison. The court sentenced Rosch to five years of probation for the embezzlement charge, along with 500 hours of community service, and a fine of $100,000.
 On March 6, 1992, Rosch filed a pro se motion to vacate his sentence and conviction. This motion was denied on April 23, 1992. Rosch appealed the denial of this motion on May 14, 1992. On July 17, 1992, the district court entered an "Amended Judgment Order," which memorialized certain oral findings of fact made at the sentencing hearing, and ordered that it be appended to the presentence investigation report. On July 27, 1992, Rosch filed a pro se appeal from the amended judgment order. Finally, Rosch filed a petition for relief under 28 U.S.C. Sec. 2241 in the Western District of Wisconsin. The district court dismissed the petition. Rosch appealed the dismissal on December 2, 1992. This Court has ordered that the original appeal, Rosch's pro se appeal, and the appeal from the order dismissing his habeas corpus petition be consolidated.
 II.
 Rosch raises four issues on appeal: (1) whether the district court abused its discretion by denying Rosch's motion to withdraw his guilty plea; (2) whether the district court erred when it ordered Rosch to pay $2 million in restitution; (3) whether the district court failed to comply with Federal Rule of Criminal Procedure 32(c)(3)(D) and/or violated his due process rights during sentencing; and (4) whether the district court erred when it dismissed his petition for a writ of habeas corpus.
 A. The District Court Did Not Abuse Its Discretion By Denying Rosch's Motion to Withdraw His Guilty Plea
 In order to overturn a district court's denial of a motion to withdraw a guilty plea, a defendant 'must demonstrate that a fair and just reason exists for withdrawing the plea.' United States v. Saenz, 969 F.2d 294, 296 (7th Cir.1992) ( quoting United States v. Ray, 828 F.2d 399, 422 (7th Cir.1987), cert. denied, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988). It is not enough that a defendant has decided, using hindsight, that the guilty plea was a poor tactical maneuver. See United States v. Hurtado, 846 F.2d 995, 997 (5th Cir.1988), cert. denied, 488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988). The decision whether to allow the withdrawal of a guilty plea is within the sound discretion of the district court, and will be reversed only for an abuse of that discretion. Saenz, 969 F.2d at 296. The district court's findings of fact in support of its decision will be upheld unless clearly erroneous. Id.
 Rosch contends that the district court abused its discretion by not allowing him to withdraw his plea because (1) he would not have plead guilty but for certain incorrect advice he had received from his attorney and (2) his attorney's lack of preparation was so severe that he was "coerced" into pleading guilty.
 1. Incorrect Advice from Counsel
 According to Rosch, his attorney failed to advise him that by pleading guilty to the RICO charge, he would be admitting all of the underlying criminal acts charged in Count One of the indictment and would be sentenced accordingly. Rather, Rosch's attorney advised him that he would only have to admit two of the underlying criminal acts alleged in Count One, which the attorney characterized as innocuous. Rosch contends that this improper advice amounted to inadequate assistance of counsel, and that because he was not properly informed of the consequences of his plea, it was not knowing, voluntary and intelligent.
 In order to be valid, a guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). "Where ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorney's in criminal cases.' " Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) ( quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)). Defendants seeking to withdraw a guilty plea on the ground it was the result of improper advice from counsel must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Hill, 474 U.S. at 57-59, 106 S.Ct. at 369-71; Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984), reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The requirement that a defendant show prejudice serves the fundamental interest in the finality of guilty pleas. Hill, 474 U.S. at 58, 106 S.Ct. at 370; United States v. Timmerick, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) ("Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice.") ( quoting United States v. Smith, 440 F.2d 521, 528 (7th Cir.1971) (Stevens, J., dissenting)).
 
 
 1
 We conclude that Rosch suffered no prejudice due to the advice he received from counsel, since he was sufficiently informed of the consequences of his plea through other means. The district court correctly informed him of the maximum sentence he could receive upon pleading guilty, and made it clear that the court had the discretion to impose any sentence it chose up to the maximum. The trial judge's statements, the written plea agreement, the summary of the indictment and the government's opening statement, which were referred to during the hearing and incorporated into the plea proceedings, provided detailed accounts of the nature and magnitude of the charges. Furthermore, during the plea hearing, the government specifically emphasized paragraph 10 of the plea agreement, which stated that the government would "fully apprise the District Court ... of the nature, scope and extent of the defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing." The reference to "related matters" as well as the "charges against him" was sufficient to put Rosch on notice that the sentencing court was going to hear about more than just the two supposedly innocuous acts.
 
 
 2
 There is no indication that Rosch, an intelligent man with legal training and who graduated at the top of his law school class, did not understand the information provided to him.
 
 2. The Coercion Theory
 
 3
 This Court also rejects Rosch's contention that his attorney's lack of preparation at various stages made it so unlikely that he would be acquitted that he was left with no choice but to plead guilty. We doubt that this is the type of coercion contemplated by the law. See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Furthermore, Rosch's contention is contradicted by his statement under oath at the change-of-plea hearing that he was fully satisfied with his attorney's advice and representation.
 
 
 4
 Even if we accept Rosch's current position that he received inadequate assistance of counsel, we must deny relief because he has failed to demonstrate, as he must, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2066 (1984). There is no indication that Rosch, faced with a daunting indictment and the possibility of a very onerous sentence, would have decided not to accept the government's plea offer if his counsel had performed better. In fact, Rosch admitted in his pro se "Defendant's Version," filed in response to the presentence report, that he pled guilty as a tactical maneuver, because he knew that a jury would probably find him guilty of many of the crimes charged in the Third Superseding Indictment.
 
 3. Conclusion
 
 5
 For the reasons stated above, we find that the district court did not abuse its discretion when it denied Rosch's motion to withdraw his guilty plea.
 
 
 6
 B. The District Court Did Not Err by Ordering Rosch to Pay $2 Million in Restitution
 
 
 7
 Rosch contends that the district court (1) erred in calculating the amount of the restitution order it entered pursuant to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. Secs. 3663-3664; (2) abused its discretion by failing to establish a payment schedule; and (3) violated his Due Process rights. He believes that the restitution order should be vacated, or, in the alternative, that his case should be remanded for recalculation of the amount of the order.
 
 
 8
 1. The District Court Did Not Err in Calculating the Amount of Restitution
 
 
 9
 In determining the amount of restitution to be paid by a defendant pursuant to the VWPA, the district court "shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. 3664(a). Furthermore, the "order of restitution must be ascertained and delineated with an accurate computation, cannot exceed the loss actually caused, and must be set out with specific findings." United States v. Brick, 905 F.2d 1092, 1099 (7th Cir.1990). A restitution order imposed pursuant to the VWPA is reviewed for abuse of discretion, and the findings of fact upon which it is based are reviewed for clear error. See, e.g., United States v. Smith, 944 F.2d 618, 623 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). A restitution order must be reversed when the defendant shows that the district court explicitly repudiated a mandatory factor, or that it was not improbable that the judge failed to consider a mandatory factor listed in 18 U.S.C. 3664(a) and was influenced thereby. United States v. Gomer, 764 F.2d 1221, 1223 (7th Cir.1985).
 
 
 10
 Rosch contends the district court failed to make a sufficiently specific finding as to the exact amount of the loss suffered by his victims, and that therefore the restitution order was not the result of an "accurate computation," as required under United States v. Brick, 905 F.2d 1092, 1099 (7th Cir.1990). He further contends that this failure violated his overall right to be sentenced based upon accurate information. See United States v. Eschweiler, 782 F.2d 1385, 1387 (7th Cir.1986).
 
 
 11
 In calculating the restitution order, the court relied on the testimony and affidavits of a federal bank examiner, who testified that the losses attributable to Rosch's criminal acts, made up primarily of defaulted loans, were at least $12 million. The bank examiner reached this figure by taking the total amount of defaulted loans, $19.5 million, and subtracting the amount that the FSLIC was able to realize between 1985 and the time of sentencing. The bank examiner also testified that an attempt to recover $9.6 million in defaulted loans had been mired since 1986, and that another $6 million in loan losses could not be mitigated because the collateral for the loans had liabilities in excess of its value. Having heard this testimony and as well as additional evidence on the issue, the court stated that (1) the bank examiner's figures were "reasonably accurate;" (2) the exact amount of the losses was uncertain since the total amount the FSLIC might recover through foreclosing on the defaulted loans and through other means was uncertain; (3) "it would take maybe even months of analysis, and even a lot of assumptions might have to be made[, and a] lot of other evidence would have to brought in" to determine the exact amount; and, (4) a precise figure as to the total amount the FSLIC might be able to recover was not necessary, because "the evidence [was] overwhelming that [the FSLIC would be unable to recover] at least $2 million [in losses which were] caused by the [defendant's] illegal activities."
 
 
 12
 Based on the above, it is clear that the district court did not "explicitly repudiate" consideration of the losses Rosch caused in calculating the restitution order, and it is not "improbable" that the court adequately considered the data presented to it. See United States v. Gomer, 764 F.2d 1221, 1223 (7th Cir.1985). As for the court's findings, there was sufficient evidence from which the court could conclude that the losses totalled over $2 million, even though the evidence may have been insufficient to establish the exact amount. The exact amount of the losses was irrelevant so long as they exceeded $2 million, since, according to the court, Rosch would be unable to pay more than $2 million in any event. Accordingly, we conclude that the district court's factual determination of the dollar amount of the losses caused by Rosch's criminal activities was sufficiently specific and accurate, and find no abuse of discretion.
 
 
 13
 Rosch also contends that the district court failed to adequately consider his financial resources in calculating the amount of the restitution order as required under 18 U.S.C. Sec. 3664(a). He believes that this error was so severe that it violated the principles underlying our holdings in United States v. Peden, 872 F.2d 1303 (7th Cir.1989) and United States v. Mahoney, 859 F.2d 47 (7th Cir.1988).
 
 
 14
 In United States v. Mahoney, 859 F.2d 47, 49 (7th Cir.1988), we stated that the "VWPA implicitly requires the district court to balance the victim's interest in compensation against the financial resources and circumstances of the defendant--all the while remaining faithful to the usual rehabilitative, deterrent, retributive, and restrictive goals of criminal sentencing." We reiterated this holding in United States v. Peden, 872 F.2d 1303, 1311 (7th Cir.1989). We further stated in Mahoney that
 
 
 15
 at the time the court orders restitution it is most paramount that the defendant, in the all-important rehabilitative process, have at least a hope of fulfilling and complying with each and every order of the court. Thus, an impossible order of restitution ... is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitative process.
 
 
 16
 Mahoney, 859 F.2d at 52. Rosch reasons based on these holdings that, because, in his opinion, the district court merely paid "lip service" to his dire financial condition, that not only was the restitution order in his case an abuse of discretion, but that it was merely a sham, with no hope of serving any rehabilitative purpose.
 
 
 17
 Rosch's contention is not borne out by the record. The court had ample evidence before it regarding Rosch's financial condition. Having reviewed that evidence, the court found that (1) Rosch had deliberately transferred assets to his wife and children in excess of normal good faith gifts; (2) many of the assets in his wife's name were recoverable as a fraud to the government; (3) Rosch had fraudulently transferred title to a lucrative country club membership to family members at the same time he was seeking court-appointed counsel on the basis of indigence; (4) Rosch had current assets of $775,000; and, (5) Rosch had skills which would allow him to find gainful employment after his release from prison. The court also specifically stated that it had considered Rosch's financial needs, as well as those of his dependents, and the amount of loss to the victim.
 
 
 18
 This evidence provided a sufficient basis for the court's restitution order. Furthermore, Rosch's case is distinguishable from both United States v. Peden, 872 F.2d 1303 (7th Cir.1989), where the district court heard no evidence at all regarding the defendant's financial condition, and United States v. Mahoney, 859 F.2d 47 (7th Cir.1988), where the amount of the restitution order was so excessive when compared to the defendant's annual income that it was improbable that the district court adequately considered the defendant's financial condition. Accordingly, we find that the court did not abuse its discretion in its consideration of Rosch's financial condition.
 
 2. Payment Schedule
 
 19
 Rosch contends that the district court's failure to set up a payment schedule was an abuse of discretion, since it should have realized that he would be unable to pay restitution immediately. See 18 U.S.C. Sec. 3579(f)(3). As stated above, the district court had sufficient evidence upon which it could find that Rosch had the resources to pay at least a significant portion of the restitution order. Furthermore, the government has stayed its efforts to collect the award, so even if Rosch were unable to pay restitution immediately, it would make little difference. Accordingly, we find no abuse of discretion.
 
 3. Due Process Violations
 
 20
 Finally, Rosch argues that the $2 million restitution order deprived him of due process because the RICO count did not allege a precise loss amount. He relies on several cases, including United States v. Peredo, 884 F.2d 1029 (7th Cir.1989), in which we reversed a sua sponte restitution order in the amount of $62,300, issued without any specific findings of fact, where the defendant pled guilty to a fraud count charging him with taking "over $5,000."
 
 
 21
 As we stated in section II.A.1. of this opinion, Rosch had adequate notice of the nature and magnitude of the criminal acts alleged in the RICO charge. He received sufficient notice of that he might be exposed to a substantial restitution order. Accordingly, we conclude that Rosch's case is distinguishable from Peredo, and find no violation of Rosch's Due Process rights.
 
 4. Conclusion
 
 22
 We find no reversible error in connection with the district court's restitution order.**
 
 
 23
 C. The District Court Did Not Fail to Comply With Federal Rule of Criminal Procedure 32(c)(3)(D) and Did Not Violate Rosch's Due Process Rights During Sentencing
 
 
 24
 Finally, Rosch contends the district court erred by failing to comply with Federal Rule of Criminal Procedure 32(c)(3)(D), which provides that
 
 
 25
 [i]f the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.
 
 
 26
 Rosch points out that he vigorously questioned the accuracy of the presentence report with respect to the amount of loss suffered by his victims, and contends that the court failed to accurately state its findings on the issue or that it would not be relying on the amount of loss in sentencing him. He further contends the court erred by not attaching written findings on this issue to the presentence report in a timely fashion. Finally, he contends that these errors were so severe as to deny him his due process right to be sentenced based on accurate information. See United States v. Eschweiler, 782 F.2d 1385, 1387 (7th Cir.1986).
 
 
 27
 Before examining Rosch's contentions, we deem it appropriate to review the twofold purpose of Rule 32(c)(3)(D): First, the Rule protects a defendant's due process right to fair sentencing procedures, particularly the right to be sentenced on the basis of accurate information. Second, it provides a clear record of the disposition and resolution of controverted facts in the presentence report. This record aids both appellate courts in their review of sentencing hearings and the administrative agencies that use the report in their own decision making processes. Eschweiler, 782 F.2d at 1387.
 
 
 28
 Turning to Rosch's contentions, we conclude that the court made adequate findings as to the amount of loss suffered by Rosch's victims. We reach this conclusion for the same reasons stated in section II.B. of this opinion. Furthermore, both of the policies underlying Rule 32(c)(3)(D) have been adequately served: As stated in section II.B. of this opinion, the district court's calculation of the loss to Rosch's victims was sufficiently accurate and specific so as not to deny him his right to be sentenced based on accurate information. Second, the district court's written and oral findings were sufficiently clear to establish an adequate record for this court to examine and to provide necessary information to any other entity to which the information is relevant.
 
 
 29
 We also reject Rosch's contention that the court committed reversible error by failing to attach written findings on these issues to the presentence report in a timely fashion. On July 17, 1992, almost five months after it sentenced Rosch, the court entered an "Amended Judgment Against Defendant," which contained a "Sentencing Order of Determination, Findings of Fact and Statement of Reasons," and ordered the latter to be attached to the presentence investigation report, and that copies be sent to the Bureau of Prisons and Parole Commission as soon as possible. Rosch contends that these written findings did not satisfy Rule 32(c)(3)(D) because (1) the court lacked jurisdiction to enter them, since he had already filed notice of appeal, and (2) the written findings of July 17, 1992, are not sufficiently definite as to the amount of the losses his victims suffered and the court's written findings as to Rosch's ability to pay are so erroneous as to be inadequate to satisfy the requirements of Rule 32(c)(3)(D).
 
 
 30
 As for the jurisdictional matter, Rosch relies on United States v. Edwards, 800 F.2d 878, 882-84 (9th Cir.1986), in which the court remanded the case for resentencing where the district entered its written findings five months after notice of appeal was filed. The Edwards court held that the district court no longer had jurisdiction to make written factual determinations under Rule 32(c)(3)(D) once the notice of appeal was filed. Id. The court reasoned that Rule 32(c)(3)(D) clearly contemplated that all disputed facts related to sentencing should be resolved prior to sentencing so that they could be incorporated into the sentencing decision, and that determination after sentencing would not serve this goal. Id. at 883.
 
 
 31
 Rosch's reliance on Edwards is misplaced. In Edwards, the district court actually made factual findings after sentencing the defendant. In Rosch's case, there is no indication, contrary to Rosch's contentions, that the district court made any new factual determinations after it sentenced him. The court merely reduced the findings it had already made to writing. It was merely performing a ministerial function. See United States v. Moran, 845 F.2d 135, 139 (7th Cir.1988) (holding the attachment of written findings to the presentence report is merely a ministerial function, which may be performed by the United States Attorney). Attaching written findings after sentencing does not undermine the policies underlying Rule 32(c)(3)(D) where such determinations were made before the sentencing decision. Id.
 
 
 32
 We also conclude, for the same reasons as we stated in section II.B. of this opinion, that the written findings as to the amount of loss sustained by Rosch's victims were sufficiently specific to satisfy Rule 32(c)(3)(D) and that the court's written findings as to Rosch's ability to pay were not so erroneous as to fail to satisfy Rule 32(c)(3)(D). Finally, because we find the court made adequate and timely findings as required under Rule 32(c)(3)(D), we also reject Rosch's contention that his due process right to be sentenced based on accurate evidence was violated.
 
 
 33
 D. The District Court Did Not Err When It Dismissed Rosch's Petition for a Writ of Habeas Corpus
 
 
 34
 On October 24, 1992, Rosch filed a petition in the Western District of Wisconsin, where he had been imprisoned, seeking relief under 28 U.S.C. Sec. 2241 and other statutes. The petition expressly stated that it had not been brought pursuant to 28 U.S.C. Sec. 2255. The district court dismissed the petition on the grounds that (1) Rosch was attacking the propriety of his sentence rather than the conditions of his confinement, and hence the petition should have been brought under 28 U.S.C. Sec. 2255 rather than 28 U.S.C. Sec. 2241, see Miller v. United States, 564 F.2d 103, 105 (1st Cir.1977), cert. denied, 435 U.S. 931, 98 S.Ct. 1504, 55 L.Ed.2d 528 (1978); (2) the court lacked jurisdiction to consider a petition attacking the propriety of Rosch's sentence, since such petitions must be brought before the court which imposed the sentence, see id.; and (3) because the propriety of Rosch's sentence was currently being reviewed by this Court, it would be inappropriate for the district court to consider it. See Black v. United States, 269 F.2d 38, 41 (9th Cir.1959), cert. denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357 (1960). We find no fault with the district court's reasoning.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable Spencer Williams, District Judge of the United States District Court for the Northern District of California, is sitting by designation
 
 
 **
 Rosch also argues that the district court erred by fining him $100,000, since the fine will impair his ability to pay restitution. Because we find the court had sufficient evidence from which it could conclude that Rosch has the ability to comply with the restitution order, we find that the imposition of the fine was not error